UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.A.M.C.,<br><br>   Petitioner-Plaintiff,<br><br>   v.<br><br>Sergio ALBARRAN, Acting Field Office Director of the San Francisco Immigration and Customs Enforcement Office; Todd M. LYONS, Acting Director, Immigration and Customs Enforcement, U.S. Department of Homeland Security; Kristi NOEM, in her Official Capacity, Secretary, U.S. Department of Homeland Security; and Pam BONDI, in her Official Capacity, Attorney General of the United States;<br><br>   Respondents-Defendants. | 3:25-cv-09649 M.C. v. Albarran et al<br><br>**ORDER GRANTING TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 2 |

Petitioner-plaintiff J.A.M.C. ("petitioner") moves the Court *ex parte* for a temporary restraining order that would, among other things, require his immediate release from ongoing detention by agents of Immigration and Customs Enforcement ("ICE") and prohibit ICE from re-arresting petitioner without affording him a hearing before a neutral decisionmaker.[1] For the reasons set forth below, the Court grants the requested order. The Court orders defendants to release J.A.M.C. from his ongoing detention and prohibits defendants from re-arresting or otherwise re-detaining J.A.M.C. without first providing him with a hearing before an immigration judge at which the government establishes by clear and convincing evidence that revocation of his previously-granted bond is appropriate because detention is necessary to prevent his flight or to

---

[1] Petitioner asks the Court to prohibit his deportation during the pendency of the underlying case. At this time, however, the threat of deportation is too remote to warrant emergency *ex parte* relief.

protect the public.

## BACKGROUND

The evidence before the Court establishes that J.A.M.C. arrived in the United States in 1991, when he was three years old. Aside from a brief absence in 2008, he has resided in the United States since that time.

J.A.M.C. has three United States citizen children, two of whom have been diagnosed with autism. J.A.M.C. emotionally and financially supports them, and he is currently employed as a barber. On February 5, 2025, the Department of Homeland Security ("DHS") detained him at his home for violating the Immigration and Nationality Act § 212(a)(6)(A)(i) (entered without inspection). On February 19, 2025, following the issuance of a warrant for arrest, DHS placed J.A.M.C. in 8 U.S.C. § 1229a proceedings. On April 15, 2025, an Immigration Judge reviewed J.A.M.C.'s immigration history, criminal history, and equities, and ordered him released on a $10,000 bond with an ankle monitoring device. DHS waived its right to appeal.

On November 7, 2025, J.A.M.C. appeared at the ICE Field Office in San Francisco for a scheduled check-in. Shortly after his arrival, he was detained by ICE for allegedly violating the GPS monitoring terms. ICE alleges that, on Labor Day, J.A.M.C. violated his bond when he visited Stinson Beach to spend the day with his girlfriend. J.A.M.C. alleges that he had requested and been granted permission for the trip by his ISAP officer. J.A.M.C. is currently being held at 630 Sansome Street in San Francisco, California.

J.A.M.C., with representation of counsel, filed a petition for a writ of habeas corpus and *ex parte* motion for a temporary restraining order on November 7, 2025. Among other claims, he contends that his arrest and detention violates the Due Process Clause of the Fifth Amendment, both substantively (because defendants allegedly have no valid interest in detaining petitioner) and procedurally (because defendants have not provided hearings or any other form of process when revoking his conditional release). The defendants are Sergio Albarran, Acting Field Office Director of the San Francisco Immigration and Customs Enforcement Office; Todd M. Lyons, Acting Director, Immigration and Customs Enforcement, U.S. Department of Homeland Security; Kristi Noem, in her Official Capacity, Secretary, U.S. Department of Homeland Security; and Pam

Bondi, in her Official Capacity, Attorney General of the United States.

## LEGAL STANDARDS

The standard for issuing a temporary restraining order is largely identical to the standard for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). Petitioners seeking such relief must establish that (1) they are "likely to succeed on the merits"; (2) they are "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [their] favor"; and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 21 (2008). "[I]f a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor and the other two *Winter* factors are satisfied.'" *All. for the Wild Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)). "Where, as here, the party opposing injunctive relief is a government entity, the third and fourth factors—the balance of equities and the public interest—merge." *Hubbard v. City of San Diego*, 139 F.4th 843, 854 (9th Cir. 2025) (citation modified).

Although the substantive standards for both motions are similar, the timeframe for a temporary restraining order is different. While a preliminary injunction remains in effect pending final resolution of the litigation, "a TRO 'should be restricted to … preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

Federal Rule of Civil Procedure 65(b)(1) allows a temporary restraining order to be issued without notice to the opposing party—i.e., *ex parte*—only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."

3

**ANALYSIS**

As an initial matter, J.A.M.C. has satisfied the requirements for issuance of an *ex parte* order. The affidavit of petitioners' counsel demonstrates that he will suffer immediate and irreparable injury, loss, or damage by virtue of his continued detention before respondent can be heard in opposition, and that counsel attempted to contact the United States Attorney's Office on November 7, 2025.

With respect to the showing required to justify J.A.M.C. requested relief, he has demonstrated a likelihood of success on the merits of his claim that his ongoing detention violates his procedural due process rights under the Due Process Clause of the Fifth Amendment. A noncitizen like J.A.M.C. who was conditionally released into the United States has a significant liberty interest in remaining out of immigration custody. *Pablo Sequen v. Albarran*, No. 25-CV-06487-PCP, __ F. Supp. 3d __, 2025 WL 2935630, at *5 (N.D. Cal. Oct. 15, 2025). Additionally, just as people on parole and probation have a liberty interest, "so too does [J.A.M.C.] have a liberty interest in remaining out of custody and on bond." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) (citing *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973)).

Because J.A.M.C. has resided in the United States for over thirty years—certainly long enough to "begin[] to develop … ties" and become "a part of our population"—the Fifth Amendment entitles him to due process protections for that liberty interest. *Id.* at *5 (first quoting *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982); and then quoting *Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903)). The statutory procedures potentially available to J.A.M.C. do not satisfy that constitutional mandate. Even assuming that he will receive a post-arrest hearing before an immigration judge, there remains a substantial risk that the government is erroneously depriving him of his liberty in the meantime, as the available record suggests that he is neither a flight risk nor a danger to the public *See id.* at *8; *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The concern that he is being detained without justification is particularly strong here given that an immigration judge decided earlier this year that J.A.M.C. was neither a flight risk nor a danger to the public and granted him conditional release. The alleged change of circumstances—the visit to

4

Stinson Beach on Labor Day Weekend—occurred months ago. In the intervening time, J.A.M.C. did not violate any conditions of his bond and promptly appeared at his scheduled hearing. Given the limited cost of providing a custody hearing in immigration court, the government has at most a minimal countervailing interest in detaining him prior to providing him with an opportunity to explain why his detention is unjustified. *See Pablo Sequen*, __ F. Supp. 3d __, 2025 WL 2935630 at *12; *Garro Pinchi v. Noem*, No. 5:25-cv-05632, __ F.Supp.3d __, 2025 WL 2084921, at *6 (N.D. Cal. July 24, 2025). Taken together, the strength of J.A.M.C.'s liberty interest, the high likelihood of erroneous deprivation, and the government's minimal countervailing interest demonstrate that J.A.M.C. is likely to succeed on the merits of his procedural due-process claim. *See Pablo Sequen*, __ F. Supp. 3d. __, 2025 WL 2650637 at *12; *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

J.A.M.C. has also demonstrated a likelihood of irreparable injury in the absence of temporary relief due to his ongoing and likely unconstitutional deprivation of liberty. "The loss or threatened infringement upon [constitutional] rights for even minimal periods of time unquestionably constitutes irreparable injury." *Cuviello v. City of Vallejo*, 944 F.3d 816, 832 (9th Cir. 2019) (citation modified). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) (citation modified). "[I]t follows inexorably from [the Court's] conclusion" that J.A.M.C. "will likely be deprived of [his] physical liberty unconstitutionally in the absence of the injunction ... that [he] ha[s] also carried [his] burden as to irreparable harm." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017).

The final two *Winter* factors, the balance of the equities and public interest, merge because the government is the opposing party. These factors also weigh heavily in favor of granting a temporary restraining order. "Because public interest concerns are implicated when a constitutional right has been violated, all citizens have a stake in upholding the Constitution, meaning it is always in the public interest to prevent the violation of a party's constitutional rights." *Baird*, 81 F.4th at 1042 (citation modified). Further, "the Ninth Circuit has recognized that 'the costs to the public of immigration detention are staggering.'" *Jorge M. F. v. Wilkinson*, No.

5

21-CV-01434, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (citation modified) (quoting *Hernandez*, 872 F.3d at 996). And where J.A.M.C. is suffering irreparable harm while in detention, the potential harm to the government—at worst, a short delay in detaining J.A.M.C. until it makes the requisite showing of necessity before a neutral decisionmaker—is minimal. *See id.* at *3; *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025). In any case, enjoining the government from constitutional violations does not impose harm "in any legally cognizable sense." *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983).

Finally, J.A.M.C.'s immediate release is required to return him to the status quo. The "status quo" refers to the state of the parties' relationship "before the action challenged in the complaint occurred." *Youth 71Five Ministries v. Williams*, No. 24-101, __ F.4th __, 2025 WL 2385151, at *5 (Aug. 18, 2025). Here, that is the moment prior to J.A.M.C.'s likely illegal detention. *See Pablo Sequen*, __ F. Supp. 3d __, 2025 WL 2650637, at *4 n.2; *Kuzmenko v. Phillips*, No. 25-CV-00663, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025) (granting a temporary restraining order requiring immediate release of the petitioner back to home confinement from custody, as a restoration of the status quo).

Because J.A.M.C. satisfies all of the requirements for temporary injunctive relief and such relief is necessary to restore the status quo, his motion for a temporary restraining order is granted. *See Pablo Sequen v. Kaiser*, No. 25-CV-06487-PCP, 2025 WL 2203419, at *3 (N.D. Cal. Aug. 1, 2025) (collecting similar cases). And because "there is no realistic likelihood of harm to the [respondents] from enjoining [their] conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003), no security is needed to ensure that respondents will be reimbursed for "costs and damages sustained by … hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court exercises its discretion under Rule 65(c) to dispense with the filing of bond. *Jorgensen*, 320 F.3d at 919.

**CONCLUSION**

For the foregoing reasons, it is hereby **ORDERED** that petitioners' motion for a temporary restraining order as to J.A.M.C. is **GRANTED** to preserve the status quo pending further briefing and a hearing on this matter. Defendants are **ORDERED** to immediately release J.A.M.C. from

custody and are **ENJOINED AND RESTRAINED** from re-detaining J.A.M.C. without providing him with a pre-deprivation hearing before a neutral decisionmaker at which the government establishes by clear and convincing evidence that revocation of his previously-granted bond is appropriate because detention is necessary to prevent his flight or to protect the public. Should defendants choose to conduct such a hearing, defendants are **ORDERED** to provide J.A.M.C. with reasonable advance notice of the time and place of the hearing.

This Order shall remain in effect until November 21, 2025. The Petition for Writ of Habeas Corpus [Dkt. No. 1], Motion for Temporary Restraining Order [Dkt. No. 2], and this Order **SHALL** be served on defendants such that they receive actual notice as soon as possible. Petitioners shall file proof of service or a status report by no later than November 10, 2025, at 12:00 p.m. Defendants shall provide a status report confirming the release of J.A.M.C. by no later than November 10, 2025, at 12:00 p.m.

Defendants are **ORDERED TO SHOW CAUSE** why a preliminary injunction should not issue in favor of J.A.M.C. The hearing will be held in the courtroom of the assigned Judge at 2:00 p.m. on November 18, 2025, or as otherwise ordered by that Judge. Defendants shall file a response to petitioners' motion by no later than November 10, 2025. Any reply shall be filed by November 14, 2025.

**IT IS SO ORDERED.**

Dated: November 7, 2025

P. Casey Pitts
United States District Judge