UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J.A.M.C.,<br><br>    Plaintiff,<br><br>    v.<br><br>SERGIO ALBARRAN, et al.,<br><br>    Defendants. | Case No. 25-cv-09649-WHO<br><br>**ORDER GRANTING PRELIMINARY INJUNCTION**<br><br>Re: Dkt. Nos. 1 |

Petitioner J.A.M.C.[1] is an asylum seeker from Mexico who first entered the United States in 1991 at the age of three. He was detained by the Immigration and Customs Enforcement agency ("ICE") following a previously scheduled check-in appointment on November 7, 2025, on the basis that he had repeatedly violated the "zone boundary" conditions of his release and that he is subject to mandatory detention pursuant to 8 U.S.C. § 1225. Defendants ("the government") do not argue that he is a flight risk or danger to the community; they have not provided details about the alleged "zone" violations to J.A.M.C. or to this court.

J.A.M.C. seeks a preliminary injunction preventing the government from re-arresting him without a pre-deprivation hearing in front of an Immigration Judge ("IJ").[2] He is entitled to such a

---

[1] J.A.M.C. has filed a motion to proceed pseudonymously. At the hearing on the motion for a preliminary injunction, the government agreed that he could do so. Petitioner's motion at Docket No. 4 is GRANTED.

[2] This matter originally came before the court on J.A.M.C.'s request for a temporary restraining order and, upon its termination, a preliminary injunction. The Hon. P. Casey Pitts, acting in his capacity as a general duty judge, granted the motion for a temporary restraining order on November 7, 2025, and ordered J.A.M.C.'s immediate release from custody. Order Granting Temporary Restraining Order ("TRO Order") [Dkt. No. 6].

hearing in light of the substantial liberty interest implicated. He is likely to prevail on the merits of his claims and would suffer irreparable harm in the absence of the injunction. His motion for a preliminary injunction is GRANTED.

## BACKGROUND

J.A.M.C. has spent nearly his entire life in the United States. Brought as a child in 1991, he has resided in the United States continuously since then with the exception of a brief absence in 2008 following an arrest, conviction, and subsequent removal. Petition ("Pet.") [Dkt. No. 1] ¶ 6. J.A.M.C. lives in Antioch, California, and works as a barber in Elk Grove, California. Pet. ¶ 8. He has three minor United States citizen children, two of whom have been diagnosed with Autism Spectrum Disorder. *Id.* He provides his children with financial and emotional support. *Id.*

In April 2024, J.A.M.C. was convicted of a misdemeanor in state court and was later placed in custody by the Department of Homeland Security ("DHS") in February 2025. Silva Decl. [Dkt. No. 14-1] ¶¶ 11, 13; Pet. ¶ 7. While he was detained, ICE agents interviewed him and determined that continued detention was appropriate. Silva Decl. ¶ 13.

J.A.M.C. requested and received a bond redetermination hearing before an IJ in April 2025. Silva Decl. ¶ 14. After reviewing J.A.M.C.'s immigration history, criminal history, and additional background, the IJ determined that J.A.M.C. was neither a flight risk nor a danger to the community and ordered him released on a $10,000 bond. Pet. ¶ 7. As a condition of his release, J.A.M.C. was required to wear an ankle monitoring device, monitored by DHS. *Id.* Since his release, J.A.M.C. has not missed a court hearing or ICE appointment.

On November 7, 2025, after attending a pre-scheduled ICE check-in at the San Francisco ICE Field Office, J.A.M.C. was detained again because of an alleged violation of his GPS monitoring terms of release. Pet. ¶ 38. At the time, J.A.M.C. understood that he was being detained as a result of a trip to Stinson Beach, California, to celebrate Labor Day with his girlfriend—a trip that he had previously obtained permission to take. *Id.* In its response to the

2

TRO Order, the government now asserts that J.A.M.C. violated the conditions of his release by leaving the predetermined "zone boundary" on three additional dates—May 10, 2025, August 16, 2025, and August 19, 2025. Response to the Order to Show Cause ("Response") [Dkt. No. 14] at 14. J.A.M.C. does not have records of these alleged violations, and the government has not provided them in support of its arguments. Reply to Respondents' Response to the Order to Show Cause ("Reply") [Dkt. No. 15] at 5.

On the date of his unexpected re-detention, J.A.M.C. filed the instant Petition for writ of habeas corpus along with his motion for a TRO. *See* Dkt. Nos. 1, 2. Judge Pitts granted the TRO, and the government, already in the process of transporting J.A.M.C. to a facility in Southern California, returned J.A.M.C. to San Francisco and released him the following morning. *See* Status Report [Dkt. No. 9]. Following a round of briefing on J.A.M.C.'s motion for preliminary injunction, I held a hearing on November 21, 2025.

**LEGAL STANDARD**

To obtain a preliminary injunction, a plaintiff must demonstrate four factors: (1) "that he is likely to succeed on the merits," (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in his favor," and (4) "that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). While this is a four-part conjunctive test, the Ninth Circuit has held that a plaintiff may also obtain an injunction if he has demonstrated "serious questions going to the merits," that the balance of hardship "tips sharply" in his favor, that he is likely to suffer irreparable harm, and that an injunction is in the public interest. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–35 (9th Cir. 2011). Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

**DISCUSSION**

The crux of the government's argument rests on its understanding that J.A.M.C. is an

"applicant for admission" as defined by 8 U.S.C. § 1225(a)(1) or an "alien seeking admission" as defined by 8 U.S.C. § 1225(b)(2)(A). Response at 17–23. It acknowledges that J.A.M.C.'s February 2025 ICE detention was pursuant to "INA § 236(a)," codified at 8 U.S.C. § 1226. Response at 14. But it contends that because of J.A.M.C.'s alleged violations of the zone boundary, he is now "subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A)." Response at 16. The distinction between Sections 1225 and 1226 matters. The government is wrong.

As has been discussed in depth by Judge Pitts in another matter, Section 1225 applies to any noncitizen "who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,'" and is "treated as 'an applicant for admission.'" *Pablo Sequen v. Kaiser*, No. 25-CV-06487-PCP, 2025 WL 2650637 at *2 (N.D. Cal. Sept. 16, 2025) (quoting 8 U.S.C. § 1225(a)(1)). Section 1225 requires mandatory detention of applicants for admission. A noncitizen subject to the provisions of Section 1225(b) has no right to any pre- or post-deprivation bond hearing. *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018) ("[N]either § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings.").

On the other hand, Section 1226 applies to individuals like J.A.M.C.—"noncitizens who are 'already in the country.'" *Pablo Sequen*, 2025 WL 2650637 at *2 (quoting 8 U.S.C. § 1226). The government's argument that Section 1225, and not Section 1226, applies to J.A.M.C. defies both logic and law. *See Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503 at *8 (N.D. Cal. Sept. 12, 2025) (Chen, J.) (collecting cases). Section 1226 permits, but does not require, detention "pending the outcome of removal proceedings" and provides that the government "may continue to detain [an] arreste[e]" or it "may release" the arrestee on "bond" or on "conditional parole." § 1226(a)(1)–(2). An arrestee may be released only when the government is "satisfie[d] . . . that [he] will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." 8 U.S.C. § 1226(a)(4).

The permissible nature of detention and access to bond hearings provided by Section 1226

4

necessarily has implications for the risk of J.A.M.C.'s erroneous deprivation. There is value in the additional procedural safeguards, as I discuss further below.

### A. J.A.M.C. Is Likely To Succeed On The Merits

In his Petition, J.A.M.C. raises two causes of action: violation of procedural and substantive due process pursuant to the Fifth Amendment. He has demonstrated a likelihood of success on the merits of his claim that the Due Process Clause of the Fifth Amendment entitles him to a hearing before he may be re-detained.

"Freedom from imprisonment—from government custody, detention, or other forms of physical constraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Important to this case is that an IJ determined in April 2025 that J.A.M.C. was eligible to be released on a $10,000 bond and that he was neither (1) a danger to society or (2) likely to flee and miss his regularly scheduled ICE appointments or court hearings. Accordingly, J.A.M.C., a "parolee[,] has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).

The Supreme Court has long held that "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a grievous loss on the parolee and often on others." *Id.* (internal quotation marks omitted). Further, "[c]ourts in this district thus consistently hold that if DHS has exercised its discretion to release a noncitizen pending civil removal proceedings, the noncitizen has a protected liberty interest in remaining out of immigration custody." *Pablo Sequen*, 2025 WL 2650637 at *5 (collecting cases). "[T]he root requirement of the Due Process Clause [is] that an individual be given an opportunity for a hearing *before* he is deprived of any" liberty or property interest. *Cleaveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (internal quotation marks omitted) (emphasis in original). That requirement must be met here.

Traditionally, courts use the test established in *Mathews v. Eldridge* to identify the specific

procedural requirements mandated by due process concerns. 424 U.S. 319, 335 (1976). The Ninth Circuit has not definitively decided the question in this context but has most recently "assume[d] without deciding that *Mathews* applies." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1207 (9th Cir. 2022). *Mathews* requires that I balance the following three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335. Here, each factor supports J.A.M.C.'s right to a hearing before a neutral decisionmaker before he is re-detained for any alleged "changed circumstance."

### 1. J.A.M.C. has a substantial private interest in liberty

J.A.M.C. maintains a significant private liberty interest arising from the long amount of time he has lived in this country. As an individual who has been released from custody following a bond hearing before the IJ, he states that his liberty as currently exercised allows him to "live at home, practice his faith, [and] care for his grandmother." Pet. ¶ 56. His liberty allows him the freedom "to be with family and friends and to form the other enduring attachments of normal life," which the Court hailed in *Morrissey* to be significant considerations of one's private liberty interest. 408 U.S. at 482. This factor weighs in J.A.M.C.'s favor.

### 2. The risk of erroneous deprivation of J.A.M.C.'s liberty is high as is the probable value of additional procedural safeguards

In this instance and in similarly situated ones, where the petitioner is not simply a noncitizen but one who has been in the United States for some time, 8 U.S.C. § 1226 applies, as it has since J.A.M.C. first began interacting with the government in removal proceedings.[3] In April

---

[3] I note that even if the government were correct that J.A.M.C.'s status had somehow transformed to that requiring mandatory detention pursuant to Section 1225, that change in status in and of itself would require a pre-deprivation bond hearing due to the heightened risk of erroneous

6

2025, an IJ determined that J.A.M.C. was neither a flight risk nor a danger to the community, and permitted him to be released on a $10,000 bond. J.A.M.C. maintains that liberty interest during the course of his removal proceedings as explained above. There is a substantial risk that the government would erroneously deprive him of his liberty interest if he is not first provided with an opportunity to demonstrate why re-detention would be unwarranted. That is because "neither the government nor [J.A.M.C.] has had an opportunity to determine whether there is any valid basis for [his] detention." *See Garro Pinchi v. Noem*, 792 F. Supp.3d 1025, 1035 (N.D. Cal. 2025) (Pitts, J.).

As I have pointed out, the government failed to assert or offer evidence that detaining J.A.M.C. would curb any flight risk or to protect J.A.M.C.'s community. Should defendants wish to do so in the future, they may do so at a bond hearing before an IJ. This procedural safeguard will ensure that any future detention of J.A.M.C. is lawful. The second *Mathews* factor also weighs in favor of J.A.M.C.

### 3. The Government's interest in re-detaining J.A.M.C. without a hearing is low

The government has an interest in managing and carrying out its immigration-related duties. *See Rodriguez Diaz*, 53 F.4th at 1208 ("The government has an obvious interest in protecting the public from dangerous criminal aliens." (internal quotation marks and citation omitted)). It may seek to prevent the possibility of individuals evading removal through detention. *Id.* ("the government likewise seeks to increase the chance that, if ordered removed, the aliens will be successfully removed" (internal quotation marks and citation omitted)). Balanced against that, the government fails to demonstrate here that J.A.M.C. is a "dangerous criminal alien" or is otherwise a flight risk in need of immediate detention awaiting his removal hearing. Moreover,

---

deprivation of liberty. *See Diouf v. Napolitano*, 634 F.3d 1081, 1092 (9th Cir. 2011) (abrogated on other grounds); *see also, e.g.*, *Pablo Sequen*, 2025 WL 2650637 at * 8.

immigration custody hearings "'are routine and impose a minimal cost' . . . [so] it is likely that the cost to the government of detaining [J.A.M.C.] pending any bond hearing would significantly exceed the cost of providing [him] with a pre-detention hearing." *Garro Pinchi*, 792 F. Supp.3d at 1036 (quoting *Singh v. Andrews*, No. 1:25-CV-00801-KES, 2025 WL 1918679 (E.D. Cal. July 11, 2025)). Thus, the final *Mathews* factor favors J.A.M.C. The risk for the government is low, as is the cost.

I conclude that each of the *Mathews* factors supports J.A.M.C.'s right to a pre-deprivation bond hearing before an IJ. He has shown a likelihood of success on the merits of his Fifth Amendment Due Process claims.

### B. J.A.M.C. Is Likely To Experience Irreparable Harm Absent A Preliminary Injunction

J.A.M.C. is also likely to suffer immediate and irreparable harm without preliminary injunctive relief. *Winter*, 555 U.S. at 20. He has only been released from custody as a result of Judge Pitts' TRO Order, and the government clearly intends to re-detain him should the injunction not issue. Response at 31. The government argues only that "[t]he <u>unlawful</u> deprivation of physical liberty is a harm that is essentially inherent in detention" and that therefore I "cannot weigh this [factor] in favor of" J.A.M.C. Response at 31 (citing to *Lopez Reyes v. Bonnar*, No. 18-CV-07429-SK, 2018 WL 7474861 at *10 (N.D. Cal. Dec. 24, 2018) (Kim, J.) (cleaned up) (emphasis added)). *Lopez Reyes* does not stand for the proposition that "<u>unlawful</u> deprivation of physical liberty" is an expectation of any detention. No case stands or could stand for that proposition.

"The loss or threatened infringement upon [constitutional] rights for even minimal periods of time unquestionably constitutes irreparable injury." *Cuviello v. City of Vallejo*, 944 F.3d 816, 832 (9th Cir. 2019) (internal quotation marks and citation omitted). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury

8

is necessary." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) (citation modified). Because J.A.M.C. has established that it is likely that he will be deprived of his constitutional right to liberty absent a preliminary injunction, this *Winter* factor strongly tilts in his favor.

### C. The Balance of Equities and Public Interest Weigh In Favor of a Preliminary Injunction

When the government is a party to a case, the final two *Winter* factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). These factors also weigh in favor of an injunction. It "is always in the public interest to prevent the violation of a party's constitutional rights." *Riley's Am. Heritage Farms v. Elsasser*, 32 F. 4th 707, 731 (9th Cir. 2022) (citation omitted).

Moreover, it is worth remembering that "the costs to the public of immigration detention are staggering." *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) (internal quotation marks omitted). "[R]educed detention costs can free up resources to more effectively process claims in Immigration Court." *Id.*

That the government has been unable to allege that J.A.M.C. would cause harm to his community or fail to appear at his scheduled immigration check-ins (indeed, this Petition arose *because* J.A.M.C. was detained at his scheduled immigration check-in) leads to the conclusion that the material public costs to detain J.A.M.C. (presumably until his March 2028 asylum hearing) outweigh any benefit. The potential harm to the government is slight. It can promptly set a pre-deprivation hearing before an IJ if it has evidence that he is a flight risk or a danger to the community. *See Pablo Sequen*, 2025 WL 2650637 at *9; *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854 at *3 (N.D. Cal. June 14, 2025) (Freeman, J.).

Most importantly, the government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violation." *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983). The final *Winter* factors tip strongly in favor of granting J.A.M.C.'s petition.

# CONCLUSION

Accordingly, J.A.M.C.'s motion for a preliminary injunction is GRANTED. Defendants are ENJOINED AND RESTRAINED from re-detaining J.A.M.C. until they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before an Immigration Judge, that revocation of his previously granted bond is legally justified because J.A.M.C. is a flight risk or danger to the community.

**IT IS SO ORDERED.**

Dated: November 21, 2025

William H. Orrick
United States District Judge